# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **SCOTT M.**[1], <br><br>        Plaintiff, <br><br>    v. <br><br>**ANDREW M. SAUL,** Commissioner of Social Security, <br><br>        Defendant. | Case No. 6:18-cv-1801-SI <br><br> **OPINION AND ORDER** |

Robyn M. Rebers, ROBYN M. REBERS LLC, PO Box 3530, Wilsonville, OR 97070. Of Attorneys for Plaintiff.

Billy J. Williams, United States Attorney, and Renata Gowie, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; Ryan Ta Lu, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

      Scott M. ("Plaintiff") seeks judicial review of the final decision of the Commissioner of

the Social Security Administration ("Commissioner") denying his application for supplemental

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. When applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

social security income ("SSI"). Because the Commissioner's findings were not supported by substantial evidence, the decision is **REVERSED** and this case **REMANDED** for further proceedings.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

# BACKGROUND

## A. Plaintiff's Application

Plaintiff initially alleged that his disability began on December 28, 2010. At the administrative hearing he amended the alleged onset date to April 26, 2012—Plaintiff's 55th birthday. AR 48. He filed an application for SSI on December 28, 2014. He claimed disability caused by right superior canal dehiscence, vertigo, low tone hearing loss, autophony, short term memory issues, brain fog, tinnitus, depression, MTHFR gene mutations, fatigue, tight band around forehead, Hashimoto's hypothyroidism, peripheral neuropathy, TIA mini-stroke, and neurovascular disease. AR 98.

His application was denied first on April 21, 2015 and then upon reconsideration on September 18, 2015. Plaintiff then filed a written request for a hearing before an Administrative Law Judge ("ALJ"). Plaintiff appeared and testified at the hearing on September 20, 2017 in Eugene, Oregon. He was represented by a non-attorney representative. AR 48. The ALJ issued a written decision denying Plaintiff's application on December 13, 2017. AR 45. Plaintiff requested review of the ALJ's decision on December 27, 2017 but the Appeals Council denied this request on August 20, 2018, making the ALJ's decision the final decision of the Commissioner. Plaintiff now seeks judicial review of the Commissioner's final decision.

## B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R.

§§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

> 5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C. The ALJ's Decision

At step one, the ALJ determined that Plaintiff had not engaged in any substantial gainful activity since December 28, 2014—the date Plaintiff applied for disability benefits. AR 50. At step two, the ALJ found that Plaintiff suffered from two severe medically determinable impairments: Meniere's disease and neuropathy. AR 50. The ALJ determined that Plaintiff's medically determinable impairments of mood disorder NOS, anxiety disorder, and cognitive disorder did not significantly limit his ability to perform basic work activities. AR 51. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments

that meets or medically equals the severity of the listed impairments in 20 C.F.R. Part 404. AR 52.

Between step three and step four, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform medium work as defined in 20 CFR 416.967(c). *Id.* The ALJ added the following qualifications:

> The claimant can sit for 6 hours of an 8-hour workday, and stand or walk for up to 6 hours of an 8-hour workday. The claimant can push and pull the same weight as for the lifting and carrying limitations. The claimant can climb ramps and stairs occasionally. The claimant should avoid ladders, ropes, or scaffolding. The claimant should never be required to balance. The claimant should never work at unprotected heights and around moving mechanical parts. The claimant should never be required to operate a motor vehicle for commercial purpose. The claimant should be restricted to moderate noise environments. Time off-task would be able to be accommodated by normal breaks.

*Id.* At step four, the ALJ found that Plaintiff had no past relevant work experience. AR 56. At step five, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed, including agricultural produce packer, cook helper, and sandwich maker. AR 57.

## DISCUSSION

Plaintiff argues that the ALJ's decision finding Plaintiff not disabled was not supported by substantial evidence. Specifically, Plaintiff argues that the ALJ improperly rejected Plaintiff's subjective symptom testimony, ignored lay witness testimony, improperly weighed the medical opinion testimony of Dr. Samuel Fellin, and did not include all supported functional limitations in formulating Plaintiff's RFC.

**A. Plaintiff's Subjective Symptom Testimony**

Plaintiff contends that the ALJ failed to give clear and convincing reasons for rejecting Plaintiff's subjective symptom testimony. There is a two-step process for evaluating a claimant's

testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

The ALJ summarized Plaintiff's symptom testimony as follows:

> The claimant has alleged that he is unable to work on a regular and continuous basis due to right superior semicircular canal dehiscence, vertigo, low tone hearing loss, autophony, brain fog, tinnitus, depression, MTHFR gene mutations, fatigue, tight band around the forehead, Hashimoto's hypothyroidism, peripheral neuropathy, transient ischemic attack (TIA) ministrokes, and neurovascular disease (Ex. 4E/2; BF/3-12). The claimant indicated that his conditions adversely affect his abilities to lift more than 20

> pounds, hear, remember, complete tasks, concentrate, understand, and follow instructions (Ex. 7E/6).
>
> At the hearing, the claimant testified that he had disabling symptoms of fatigue, malaise, disequilibrium, and vertigo that made him feel as if he were on a merry-go-round. The claimant also testified that he had difficulty with bis cognitive functioning, especially short-term memory, and difficulty tracking conversations. The claimant also testified that he felt overwhelmed and mentally tired, if he were to attempt to do too many tasks. Further, the claimant testified that he continued to experience moderate to severe migraine headaches approximately three times per week, despite treatment.

AR 53. The ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, thereby satisfying step one of the framework. *Id.* The ALJ, however, determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." *Id.*

The ALJ's step two analysis is deficient for two reasons, both related to specificity. Although the decision contains a detailed and specific list of Plaintiff's symptom allegations, the ALJ did not specify which of Plaintiff's statements he rejected. He instead broadly referred to all statements "concerning the intensity, persistence, and limiting effects of these symptoms." AR 53. The ALJ also did not provide specific reasons for rejecting Plaintiff's symptom testimony— he only stated that it is "not entirely consistent with the medical evidence and other evidence in the record for reasons explained in this decision." *Id.* The ALJ later described several sources of medical evidence, but did not specify which pieces of evidence contradict which pieces of Plaintiff's symptom testimony. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015) (finding general rejection of claimant's testimony was insufficient and that ALJ committed legal error when she did not specify what testimony she rejected and why). Although the ALJ discussed medical evidence in the context of weighing medical opinions, he never connected any

part of the medical record to Plaintiff's symptom testimony. He identified several inconsistencies between medical record evidence and specific medical opinions, but he did not make the same connection between medical record evidence and Plaintiff's symptom testimony. The ALJ only vaguely refers to the "reasons explained in this decision." AR 53   This is legal error because the ALJ did not state "which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill*, 12 F.3d at 918.

**B. Lay Witness Testimony**

The ALJ failed to mention the lay testimony of Plaintiff's father, James M. The Ninth Circuit has stated that "lay witness testimony 'cannot be disregarded without comment'" *Molina*, 674 F.3d at 1114 (quoting *Nguyen*, 100 F.3d at 1467). The ALJ indisputably erred in failing to mention James M.'s lay witness testimony at all.

Courts have long recognized that harmless error principles apply in the Social Security Act context. *Id.* Courts "have, for example, deemed errors harmless where . . . [the court was] able to conclude from the record that the ALJ would have reached the same result absent the error." *Id.* As a general principle, an error is harmless when it is "inconsequential to the ultimate nondisability determination." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008). In *Stout*, the ALJ similarly erred by neglecting to comment on competent lay witness testimony, and the testimony that the ALJ disregarded identified limitations not considered by the ALJ, was uncontradicted by anything in the record, and was highly probative of Stout's inability to work. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006). As such, the court found that it was not harmless error to ignore the lay witness testimony. *Id.* "[W]here the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently

conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Id.*

James M. described Plaintiff's impaired mental and physical capabilities. AR 230 – 32. He noted that Plaintiff has trouble concentrating for more than 15-30 minutes, has difficulty following written and verbal instructions, and cannot lift more than 20 pounds without worsening his vertigo and tinnitus. *Id.* Defendant argues that the ALJ's omission of any discussion of James M.'s witness statement is harmless error because the same record evidence that discredited Plaintiff's testimony discredits James M.'s claims. *See Molina*, 674 F.3d at 1122. James M.'s statement does overlap with Plaintiff's discredited testimony. But as discussed above the ALJ did not give specific, clear and convincing reasons for rejecting Plaintiff's symptom testimony. The ALJ only stated that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." AR 53. Even if the ALJ had specifically identified "what testimony is not credible and what evidence undermines the claimant's complaints," the reasoning is inapplicable to James M.'s statements about Plaintiff's inability to lift more than 20 pounds. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (quotation marks omitted). Plaintiff testified that he could lift no more than 25-30 pounds. AR 86. The ALJ did not specifically address this testimony or point to any facts in the record for rejecting Plaintiff's testimony about this particular physical limitation. Thus, even if the ALJ had properly rejected other portions of Plaintiff's symptom testimony, it would not neutralize James M.'s testimony about his physical limitations.

James M.'s description of Plaintiff's lifting limitation is favorable to Plaintiff. The Court cannot conclude that no reasonable ALJ, when fully crediting James M.'s testimony, would have

decided this case differently. The ALJ did not even mention James M.'s testimony, and the Court can have no way of knowing what impact, if any, James M.'s testimony might have had on the ALJ's opinion. Thus, the ALJ's failure to address James M.'s statements is not harmless error.

## C. Medical Opinion Testimony

The ALJ generally will give more weight to opinions from treating sources, because they have treated the claimant over a period of time and "bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone" or from one-time evaluations performed by consulting physicians. 20 C.F.R. §§ 404.1527(c), 416.927(c)(2). If a treating physician's medical opinion is not inconsistent with other evidence in the record and is supported by medical findings, the treating physician's opinion should be given controlling weight. *See Holohan v. Masasnari*, 246 F.3d 1195, 1202 (9th Cir. 2001). In the hierarchy of medical evidence, the opinion of a treating physician is entitled to greater weight than that of an examining physician, which in turn is entitled to greater weight than that of a non-examining physician. *Garrison, v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

The ALJ serves as "the final arbiter with respect to resolving ambiguities in the medical evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041-42 (9th Cir. 2008). In that capacity, the ALJ is responsible for making credibility determinations, resolving conflicts in the medical evidence, and resolving ambiguities." *Vazquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If, however, "a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Garrison*, 759 F.3d at 1012 (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)). However, "even when contradicted, a treating or examining

physician's opinion is still owed deference and will often be 'entitled to the greatest weight . . . even if it does not meet the test for controlling weight.'" *Garrison*, 759 F.3d at 1012 (quoting *Orn v. Astrue*, 495 F.3d 625, 633 (9th Cir. 2007)).

Dr. Fellin was Plaintiff's treating physician. Dr. Fellin identified eight medical conditions that Plaintiff was suffering from. In Dr. Fellin's opinion, Plaintiff's medical conditions would "adversely affect his ability to independently and effectively sustain any kind of work." AR 1265. He noted Plaintiff's limited balance and mobility, his impaired hearing, and his impaired strength. He recommended that Plaintiff would need to take more than one "mini-break" per hour, and that he would need to lie down frequently due to his vertigo. He limited Plaintiff to lifting less than ten pounds due to Plaintiff's fall risk. In addition to affecting Plaintiff's balance and hearing, the medical conditions also impaired Plaintiff's vision to a high degree according to Dr. Fellin. Dr. Fellin's assessment of Plaintiff's ability to perform work-related mental activites was similarly pessimistic. He rated most of Plaintiff's capabilities in the areas of "Understanding and Memory," "Sustained Concentration and Persistence," and "Adaptation" as either severely impaired or moderately severely impaired. AR 1270.

The ALJ gave Dr. Fellin's opinion "little weight" because of perceived inconsistency with the treatment notes. AR 56. It is a specific and legitimate reason to discredit a physician's opinion when the opinion in incongruent with the physician's medical records. *Tommassetti*, 495 F.3d at 1041. It is also a specific and legitimate reason to reject a physician's opinion when the opinion is inconsistent with the record as a whole. *Orn*, F.3d at 631. The ALJ did not identify any inconsistencies between Dr. Fellin's opinion and his own treatment notes. The perceived inconsistencies arise between Dr. Fellin's opinion and the treatment notes of two other doctors. Dr. Spettel saw Plaintiff once in 2017 to follow up on a ureteral stricture and place a catheter. Dr.

Lee saw Plaintiff twice in 2015 on referral from Dr. Fellin. But the ALJ here did not specifically cite any other parts of the record as contradicting Dr. Fellin's opinion. The ALJ only noted inconsistencies with the treatment notes of other physicians, which is not a specific and legitimate reason as discussed above. Nor did the ALJ identify any other physician opinions that Dr. Fellin's opinion conflicts with. Again, the ALJ noted only conflict with other treatment notes. This, by itself, is insufficient to discredit Dr. Fellin's opinion. The ALJ's decision to afford little weight to Dr. Fellin's opinion is not supported by substantial evidence.

### D. RFC Formulation

The RFC represents the most that a claimant can do despite his or her physical or mental impairments. 20 C.F.R. § 404.1545. In formulating the RFC, the ALJ must consider all medically determinable impairments, including those that are not "severe," and evaluate "all of the relevant medical and other evidence." *Id.* In determining a claimant's RFC . . . the ALJ is responsible for resolving conflicts in the medical testimony and translating the claimant's impairments into concrete functional limitations. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). Only those limitations that are supported by substantial evidence must be incorporated into the RFC. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001). That is, the ALJ need not "incorporate evidence from opinions . . . which were permissibly discounted." *Batson*, 359 F.3d at 1197.

Here, the ALJ's RFC finding that Plaintiff can lift up to 50 pounds occasionally and up to 25 pounds frequently is not supported by substantial evidence. The ALJ did not state any basis for this finding. Plaintiff testified that he could lift no more than 25 or 30 pounds. Plaintiff's father stated that Plaintiff could lift a maximum of 20 pounds. AR 230. Dr. Jensen thought that Plaintiff could lift no more than 10 pounds frequently and 20 pounds occasionally. AR 106. Dr. Fellin would have limited Plaintiff to lifting 10 pounds at most. The Court found that the

ALJ improperly rejected Dr. Fellin's medical opinion, Plaintiff's testimony, and the statements from Plaintiff's father. The ALJ correctly rejected Dr. Jensen's opinion on the lifting limitation because the ALJ cited several normal physical examinations—Dr. Jensen's opinions was permissibly discounted. AR 55. This analysis, however, does not affirmatively establish support for the lifting limitations the ALJ described in the RFC. The ALJ rejected all the statements that Plaintiff could not lift more than 25-30 pounds but did not cite any specific evidence that Plaintiff could lift 50 pounds. Although the ALJ is responsible for "translating and incorporating clinical findings into a succinct residual functional capacity," the ALJ did not identify any "clinical findings" that Plaintiff could lift up to 25 pounds frequently and up to 50 pounds occasionally. *Rounds*, 807 F.3d at 1006. The lifting and carrying limitations in the RFC are not supported by substantial evidence.

The ALJ limited Plaintiff to work in moderate noise environments. Plaintiff argues that the ALJ should have restricted Plaintiff to work in quiet noise environments. Defendant responds that even if the evidence in the record might support restricting Plaintiff to quiet noise environments, there is substantial evidence that supports a moderate noise restriction. The ALJ, however, did not identify any specific evidence supporting the moderate noise restriction in his written opinion. He only mentioned Plaintiff's hearing loss in the context of Plaintiff's symptom testimony. At the hearing, the ALJ even mentioned that he "didn't see any hearing tests in the record." AR 87. This is not the case—the record includes at least five different hearing tests from five different sources. AR 29, 531-33, 606-09. The tests consistently demonstrated that Plaintiff suffers from a degree of hearing loss. The ALJ did not address these tests, instead erroneously claiming that there were no hearing tests in the record. Thus, the moderate noise environment restriction in the RFC is not supported by substantial evidence.

The ALJ's RFC did not include any limitations to account for Plaintiff's claimed attention, memory, or concentration impairments. In his decision, the ALJ noted that Plaintiff suffered from medically determinable mental impairments but that these impairments were non-severe. AR 51. Still, it is the ALJ's duty to consider "all of the relevant medical . . . evidence." 20 C.F.R. § 404.1545.

The ALJ considered the opinions of several physicians who assessed Plaintiff's mental capabilities. The ALJ properly considered the opinion of Dr. LeBray. The ALJ weighed heavily Dr. LeBray's opinion that Plaintiff would "fare best with simple to semi-complex mental related tasks." AR 55. The ALJ assigned little weight to portions of Dr. LeBray's opinions that he felt were inconsistent with the objective results, which were predominantly in the normal range. This was a specific and legitimate reason to partially discredit Dr. LeBray's opinion. The ALJ noted that Dr. LeBray found that Plaintiff's auditory verbal recall was moderately deficient. AR 54. The ALJ did not, however, assign any weight to this opinion.

The ALJ gave little weight to the opinion of Dr. Cole (an examining physician) that Plaintiff suffered from a moderate memory deficits and some problems in the areas of attention and concentration. The ALJ noted that Dr. Cole's opinion that Plaintiff had attention and concentration problems was inconsistent with his observation that Plaintiff did not exhibit any significant problems in the areas of attention and concentration. AR 54. This is a specific and legitimate reason to reject Dr. Cole's opinion on Plaintiff's attention and concentration abilities. It is not, however, a specific and legitimate reason for rejecting Dr. Cole's opinion that Plaintiff's moderate memory deficits would be a primary factor affecting his overall level of vocational success. The ALJ did not identify any inconsistencies between Dr. Cole's testing and his opinion that Plaintiff suffered from moderate memory deficits which would impact his ability to work. In

fact, Plaintiff's test results are consistent with this opinion—he scored no higher than the 16th percentile on any element of the Wechsler Memory Scale-IV, and three of his five scores were at the third percentile or lower. AR 651. The ALJ did not provide specific and legitimate reasons for rejecting Dr. Cole's opinion that Plaintiff had moderate memory deficits. This was legal error.

The ALJ noted that Dr. Kennemer and Dr. Boyd (both reviewing physicians) found that Plaintiff had moderate limitations in his ability to concentrate, persist, or maintain pace and only mild limitations in other functional areas. AR 55. The ALJ properly accorded these opinions partial weight due to discrepancies with the findings of Dr. Cole and Dr. LeBray about Plaintiff's attentional limitations. *Id.*

To summarize, the ALJ's exertional lifting and carrying limitation was not supported by substantial evidence. At the very least, the ALJ did not affirmatively cite any evidence in support of the decision that Plaintiff could lift up to 25 pounds frequently and up to 50 pounds on occasion. The moderate noise environment limitation was not supported by substantial evidence. The ALJ did not cite any evidence in support of this limitation beyond stating it in the RFC. Furthermore, the transcript indicates that the ALJ believed there were no hearing tests, when in fact Plaintiff underwent several. Although the ALJ properly excluded and limitations related to Plaintiff's attentional capacity, the ALJ erred by not including limitations related to Plaintiff's memory problems, which were supported by substantial evidence.

### E. Remand for Further Proceedings

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210 (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v.*

*Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. Id. at 1100. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Act. *Strauss v. Comm'r of Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison*, 759 F.3d 995, 999 (9th Cir. 2014). The Ninth Circuit articulates the rule as follows:

> The district court must first determine that the ALJ made a legal error, such as failing to provide legally sufficient reasons for rejecting evidence. If the court finds such an error, it must next review the record as a whole and determine whether it is fully developed, is free from conflicts and ambiguities, and all essential factual matters have been resolved. In conducting this review, the district court must consider whether there are inconsistencies between the claimant's testimony and the medical evidence in the record, or whether the government has pointed to evidence in the record that the ALJ overlooked and explained how that evidence casts into serious doubt the claimant's claim to be disabled. Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits.
>
> If the district court does determine that the record has been fully developed and there are no outstanding issues left to be resolved, the district court must next consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. Said otherwise, the district court must consider the testimony or opinion that the ALJ improperly rejected, in the context of the otherwise undisputed record, and determine whether the ALJ would necessarily have to conclude that the claimant were disabled if that testimony or opinion were deemed true. If so, the district court may exercise its discretion to remand the case for an award of benefits. A district court is generally not required to exercise such discretion, however. District courts retain flexibility in determining the appropriate remedy and a reviewing court is not required to credit

claimant's allegations regarding the extent of their impairments as true merely because the ALJ made a legal error in discrediting their testimony.

*Dominguez v. Colvin*, 808 F.3d 403, 407-08 (9th Cir. 2015) (internal citations and quotation marks omitted).

Here, the ALJ committed reversible errors in assessing the medical opinions of Drs. Fellin and Cole. This led to errors in formulation of the RFC. The ALJ also did not provide a legally sufficient rationale for rejecting Plaintiff's symptom testimony and did not consider the testimony of Plaintiff's father at all. However, the Court cannot find that the record as a whole is fully developed and free from all conflicts and ambiguities.

## CONCLUSION

The Commissioner's decision that Plaintiff was not disabled is **REVERSED AND REMANDED** for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 25th day of November, 2019.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge